**IN THE UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

PLUMBERS AND STEAMFITTERS          *
LOCAL 486 MEDICAL FUND,
by its Trustee,                    *
Bernard J. Vondersmith
                                   *
        Plaintiff
                                   *

v.                                 *    CIVIL ACTION NO. MJG 03-219

RITA L. BOOKS                      *
and
ROGER BOOKS                        *

and                                *

NATHANIEL FICK, P.C.               *
CLIENT TRUST ACCOUNT
                                   *
        Defendants

    *    *    *    *    *    *    *    *    *    *

**DEFENDANTS' MEMORANDUM IN OPPOSITION**
**TO MOTION FOR SUMMARY JUDGMENT OF PLUMBERS**
**AND STEAMFITTERS LOCAL 486 MEDICAL FUND**

Defendants, Rita L. Books, Roger Books and Nathaniel Fick, P.C. Client Trust Account,

here respond to the Motion for Summary Judgment of Plaintiff, Plumbers and Steamfitters Local

486 Medical Fund ("the Fund"). Defendants respectfully request that this Motion be denied, and

they state:

## I. BACKGROUND

The action presented by Plumbers and Steamfitters Local 486 Medical Fund advances a

subrogation claim against recovery obtained by one Defendant named in this action, Rita L.

Books, who did recover money from a third party, and against one Defendant who recovered nothing from a third party, Roger Books. Moreover, the Fund brings this claim also against the client trust account, Nathaniel Fick Client Trust Account, which not only did not "recover" anything from a third party, but has not one thin dime of the sum or sums alleged to be in dispute. Those funds, the $57,395.60, are known by the Fund, to have been deposited pending resolution of the claims pending, by consent and pursuant to Order of this Court.

The money deposited with this court had been recovered in an action against the third-party tortfeasor responsible for a motor vehicle collision which occurred in 1998, and which caused substantial and permanent injuries to Rita L. Books.

On May 20, 1998, Mrs. Books was traveling southbound on Interstate 95 in her 1992 Toyota Corolla. She was struck by a 1996 Volvo tractor trailer truck with trailer in tow. The initial impact caused her to go into a spin and she was then hit again by the tractor trailer. Mrs. Books' vehicle was destroyed. She was left permanently and totally disabled due to her traumatic brain injury and all the associated complications.

Specifically, as a result of this accident, Mrs. Books now lives with a panorama of problems and deficits, including difficulties with memory, speech, language skills, cognition, concentration, dexterity, balance when walking, interpretive deficits, and attention deficits, as well as lightheadedness and headaches. She also has problems with depression that include insomnia, fearfulness in familiar situations, panic attacks, internal trembling, vision deficits, hopelessness, and sadness.

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 2 OF 24
CASE NO. MLG 03-219

At the time of the 1998 accident, Mrs. Books was 38 years old. She is now 43. Mrs. Books was a registered clinical nurse with the Johns Hopkins Bayview Medical Center; she had worked there since 1985. As a result of this accident, she has become permanently disabled and has been unable to work since May 20, 1998. She did attempt to return to work. However, after a few days it was evident that due to cognitive dysfunction she was not functioning well. She is now totally disabled.

Following application made on or about November 1999, Mrs. Books now receives social security disability; her monthly disability benefit is $1,310. She is not expected to be able to return to gainful full-time employment in her lifetime. These facts have been established in the context of the underlying proceeding and are not materially in dispute.

Mrs. Books' future wage loss alone exceeds $500,000. The statutory non-economic cap applicable to the event as a Maryland accident was for that time $ 545,000.

## II. DISCUSSION

### A.    Summary Judgment Standards

Summary judgment is a process to determine if material facts are not in dispute and also if the moving party is entitled to judgment as a matter of law. It is not a substitute for trial.

Defendant further emphasizes that summary judgment is not a short-cut procedure. It is not designed to dispense with claims which should be tried. To avoid summary judgment, a party must state facts or present objective evidence indicating he is entitled to relief. See Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, summary judgment should not be a rush to judgment. As stated in Douglas v. Anderson, 656 F.2d 528 (9th Cir. 1981):

> We recognize that summary procedures should be used judiciously, particularly in cases involving issues of motivation or intent.

Therefore, if there are legitimate and genuine disputes of material fact, summary judgment should not be entered. See Tuck v. Henkel Corporation, 973 F.2d 371 (4th Cir. 1992). And see Caucasian v. Westinghouse Electric Co., 862 F.2d 56 (3rd Cir. 1988) (on same general issues); EEOC v. Southwest Texas Methodist Hospital, 606 F.2d 63 (5th Cir. 1979, cert.den. 445 U.S. 928, reh.den. 446 U.S. 947 (when dealing with situations which necessarily involve examining motive and intent, granting summary judgment is particularly questionable).

Even in the oft-cited Supreme Court opinion of Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1985), the Court noted that the availability of summary judgment turns on whether "a proper jury question was presented." 477 U.S. at 249, citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). As Anderson also stated: "it is clear enough from our recent cases that at the summary judgment stage the judge's function is not [himself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." The Court added at 477 U.S. 250 [footnote omitted]:

> Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This approach evaluates the matter under the same "substantial evidentiary standard" similar to directed verdict. See 477 U.S. at 252 and at 254. And see Celotex Corp. v. Catrett, 477 U.S. 317 (1986), which notes that one of the principal purposes of summary judgment "is to

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 4 OF 24
CASE NO. MLG 03-219

isolate and dispose of <u>factually unsupported</u> claims or defenses... ." (477 U.S. at 323-324). The moving party has the burden of showing that there is no genuine issue of material fact <u>and</u> the moving party is entitled to judgment as a matter of law. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406 (4th Cir. 1979).

Thus, summary judgment should not be employed unless there is such clarity in reviewing the matter that there is no room for reasonable controversy over the case or its disposition. <u>Moore v. Ernest-Jackson</u>, 123 F.3d 1082 (8th Cir. 1997). Summary judgment, therefore, is not appropriate when reasonable minds can differ. <u>EEOC v. Clay Printing</u>, 955 F.2d 936 (4th Cir. 1991), at 946.

As Defendants have pointed out in this brief review, the threshold inquiries for summary judgment are whether there exist genuine disputes of material fact AND whether the moving party is entitled to judgment as a matter of law.  Under either approach, the Fund's summary judgment motion should be denied.

### B.    Question Presented

At issue is <u>not</u> whether the Fund has a <u>recognizable avenue</u> to advance its reimbursement or subrogation claim.  Rather, the issue more properly is whether, under any equitable form of relief available to the Fund, a full consideration of equitable principles applicable to these circumstances <u>permits the Fund to recover</u> in its claim, especially given the language of the Fund's own policy. Therefore, not only is the language, interpretation and applicability of the Plan in dispute, but also to be determined is the Plan's entitlement to recovery under these circumstances.

C.    Additional Factual and Procedural Description

The direct harm from the collision of  May 20, 1998 was clearly to Rita Books (a dependant), with immediate consequent harm to Rita Books and Roger Books as husband and wife (recognized consortium claim in Maryland).   Each of them had a right to pursue all or any part of available claims against the wrongdoer, the driver causing the harm, or not to pursue such claims.

By the same token, the Fund had responsibilities and contractual rights, generated by and specific to the injuries sustained by Rita Books due to the May 20, 1998 accident, since she is a dependent of a Local 486 member covered by the Fund's health plan. It was incumbent upon the Fund, therefore, to secure its own rights arising from that injurious event, including a right to intervene in such action or to independently pursue any available cause of action against the wrongdoer.  This right, specifically reserved to the Fund, is stated in the Plan as follows: [The Fund reserves unto itself the] "right to pursue its reimbursement claim directly against the third party." Yet, the Fund took no such action in the underlying matter.

Roger Books reiterates that he recovered nothing from any third party in that underlying matter. Accordingly, Mr. Books has no duty to make any equitable restitution to Plumbers and Steamfitters Local 486 Medical Fund.  Defendant Roger Books contends that the Fund has no entitlement to restitution and are not entitled to any sum, much less the amount sought of $57,395.60.  Roger Books received nothing in recovery from the third party.

Rita Books did recover a sum, $ 637,500.00. Nonetheless, despite the size of that settlement, it is wholly inadequate to fully compensate her for the entire range of non-economic

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 6 OF 24
CASE NO. MLG 03-219

and economic damages sustained.  As an injured citizen with a cause of action for civil wrongdoing by another causing her grievous bodily harm with all of the attendant consequences, she had a right to seek redress and to personally elect what remedies she might seek to pursue, including deciding which claims she will pursue and deciding whether to settle the matter rather than proceed with litigation. It is assumed that the Fund does not here contend that Mrs. Books improperly pursued or settled her claim.  Further, as will be explained, Defendant Rita L. Books contends that the Fund has no entitlement to restitution and are not entitled to any sum, much less the amount sought of $57,395.60.

In addition, as has been stated here and in previous pleadings before this Court, Nathaniel Fick, P.C. Client Trust Account, which the Fund has continued to name as a party, has--and had--no duty at any time to the Fund, whatsoever.  Nathaniel Fick, P.C. Client Trust Account was merely a repository for funds, including the funds or sum in the amount sought of $57,395.60. These funds are no longer in the Nathaniel Fick, P.C. Client Trust Account. There exists no relief at law or in equity which the Fund can articulate as to this named party. Defendant Nathaniel Fick, P.C. Client Trust Account has paid into escrow, the disputed amount of $57,395.60, and has no duty beyond that depository transaction which was presented by Consent and pursuant to Order of this Court. Defendant Nathaniel Fick, P.C. Client Trust Account disputes any entitlement to relief as prayed by Plaintiff.

The Plan and its counsel are fully aware the Plan has already utilized "self-help" by continuing to accept payment of some consideration derived from direct payroll deduction from wages of Roger Books.  Yet, the Plan has now for over one year refused to process or pay other

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 7 OF 24
CASE NO. MLG 03-219

health benefits or health related expenses either related to Rita Books and her continuing medical treatment and injuries, or as to other members of the Books family or household covered by the Plan, which expenses are within Plan coverage.    This improper situation was the essence of Defendants' Counterclaim.

D.     Discussion:  Policy Language, Equitable Principles and "Made Whole" Rule

1.  Policy Language

The subject Plan provides, in pertinent part (Plumbers & Steamfitters Local 486 Medical Fund - Summary Plan Description):

> "SUBROGATION
> If you or one of your Dependents . . . is injured . . . by a third party . . . the Plan will pay covered benefits as usual.  If <u>you</u> recover damages from an insurance company or from the third party as a result of a settlement or award for the Injury, the Plan must be reimbursed for any expenses that it paid in connection with the Injury."  (Emphasis by underline added).

By this language, the Fund's right of subrogation is confined to the person designated as "you" in the subrogation terms.  The plan, in its extensive provisions, does not specifically define the word "you".  Nonetheless, it is abundantly plain in reviewing the Plan that this word is intended <u>exclusively</u> to refer to the covered employee only.  In fact, at various times in the Plan's language, the phrase "and covered dependants" is added when the plan wishes to refer to the employee and such dependants.

By a plain and direct reading of the subrogation terms, the conclusion is inescapable that the Plan has restricted its subrogation right to the covered employee only.  Therefore, an

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 8 OF 24
CASE NO. MLG 03-219

appropriate application of the Fund's own subrogation term required the conclusion that the Fund cannot assert any subrogation claim against anyone other than the covered employee.

Rita Books clearly is a dependant, or spouse, of the covered employee, Roger Books. But, she plainly is not the person to whom the term "you" refers, in the Plan subrogation provision. Therefore, the Plan has no right that can be derived from its contract to assert any subrogation claim against Rita Books. Consequently, its subrogation or reimbursement here necessarily falls.

This result may seem incongruous. Nevertheless, the Fund had the ability to define and describe its terms and conditions. By the language of this subrogation provision, the Fund has voluntarily restricted its subrogation rights to the covered employee only.

It is not disputed that Mr. Books took no recovery in the underlying action. Thus, even under the Fund's subrogation language, it has no subrogation claim against him in any case.

The matter stops at this point.

### 2. Available Claim and Related Considerations

Assuming that the Fund's own subrogation language does not preclude recovery for the Fund in this context, the Fund bases its summary judgment claim chiefly upon its analysis of Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 2002. The Fund takes great pains to analyze and demonstrate the applicability of Great-West here. Yet, as an initial matter, Defendants readily concede that the Fund, by its subrogation term and by well established subrogation principles, is entitled to present some form of legal or equitable reimbursement or subrogation claim in this instance. The Fund appears to confuse the availability of a claim with entitlement to recover under that claim in a given instance, as here.

However, merely citing and discussing <u>Great-West</u> does not open the skies of relief for the Fund. The core discussion remains whether the Fund can recover against Defendants. The Fund goes on in its memorandum for numerous pages discussing and analyzing related cases, such as <u>Primax Recoveries, Inc. v. Lee</u>, ___ F. Supp. 2d ___, 2003 WL 1961349 (D. D.C. 2003) and <u>In re Carpenter</u>, 36 Fed. Appx. 80, 28 Empl. Ben. Cas. 2043, 2002 WL 1162277 (4th Cir. 2002). Essentially, the Fund states its position as follows: "Where money or property sought has been dissipated, plaintiff's claim is legal, seeking to impose personal liability on the defendant. Where money or property can be clearly traced to particular funds in the defendant's possession and can be identified as belonging in good conscience to the plaintiff, the claim sounds in equity."

The Fund then proceeds to explain how its claim is proper in the context of these cases. The Fund basically concludes its discussion with the statement, "In the present case, Plaintiff has a right to subrogation as set forth in the terms of the Plan." Apparently, the Fund is of the impression that saying it makes it so. This has never been a case of whether <u>Great-West</u> does or does not apply, or whether an insurer's "right" of subrogation, however it may be described in the case law, continues to survive after <u>Great-West</u>. The plain and simple essence of this case is whether under these circumstances the Fund's subrogation claim (assuming it is not precluded by the Fund's own language) can be honored; that is, whether a right to recover generally translates into entitlement to recovery specifically.

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 10 OF 24
CASE NO. MLG 03-219

### 3. The "Made Whole" Rule Prevents Recovery

#### a. The "Made Whole" Rule and ERISA

Central to the determination of whether the Fund can recover in its subrogation claim here, however it may be described, is the well known equitable principle of the "made whole" rule. That rule states that subrogation, because it is an equitable doctrine, must be viewed in light of the nature of the recovery from a third party <u>obtained by a person</u> who has in turn received certain benefits through an insurer or medical plan. That is, if the recovery does not "make whole" the person for the injuries sustained, a "first and full dollar" reimbursement or subrogation should not be imposed. Accordingly, the subrogation interest either cannot be recognized or must be recognized proportionately.

Defendants state that the recovery obtained by Mrs. Books, given the extent and permanency of her injuries, does not make her whole. Nor can it be disputed that the Fund's subrogation provision does not contain an express reference to the "make whole" doctrine and does not expressly waive that doctrine.

The "make whole" doctrine has been recognized by Federal courts in similar circumstances, either by reference to State law or as part of the federal common law of ERISA. Application of these principles in this instance severely affects or restricts the Fund's subrogation claim.

For example, the "make whole" doctrine was expressly considered by the 10th Circuit in <u>Fields v. Farmers Insurance Co.</u>, 18 F.3d 831 (10th Cir. 1994), which was before the District Court (Oklahoma) under diversity jurisdiction, but which did involve a health insurer as one of the parties. The <u>Fields</u> court noted that an insurer's right of subrogation can be affected "when

the insured has not been fully compensated, or made whole, for his losses." Such subrogation claim becomes a claim of "equitable subrogation" that depends not on contract, but on the equities of the parties. Pointing out an instance where the doctrine was applied, the court noted that an insurer's subrogation claim can be totally rejected if the insured had not been "fully compensated" in recovery from a third party. Citing <u>Gentry d/b/a Gentry Enterprises, Inc. v. American Motorist Insurance Company</u>, 867 P.2d 468 (Okl. 1994).

The court further observed that many jurisdictions follow the general principle that "an insurer is not entitled to equitable subrogation until the insured has been fully compensated." (And see cases cited at 18 F.3d at 835). Some courts adopting the rule "have explained that the rule is most consistent with principles of equity and justice upon which the doctrine of subrogation is based." Thus, where either the insurer or the insured must go unpaid, "`the loss should be borne by the insurer for that is a risk the insured has paid it to assume.'" Quoting <u>Garrity v. Rural Mutual Insurance Co.</u>, 77 Wisc.2d 537, 253 N.W.2d 512 (1977), at 514.

The <u>Fields</u> court, however, also noted that many jurisdictions following the rule "allow the rule to be overridden by provisions in an insurance contract." (But note <u>Powell v. Blue Cross & Blue Shield</u>, 581 So.2d 772 (Ala. 1990), where a divided court found that the doctrine could not be precluded by language in an insurance policy). The <u>Fields</u> court thus decided that the insurance policy was clear enough in its description of its subrogation rights (subrogated to "*any* recovery") to preclude application of the make-whole doctrine.  *Here, there is no express reference by the Plan to the "make whole" doctrine.*

Also, the Eleventh Circuit, in <u>Guy v. Southeastern Iron Workers' Welfare Fund</u>, 877 F.2d 37 (11th Cir. 1989), determined in an ERISA context that the "make whole" rule can be

considered as a matter of Federal common law of ERISA. The situation also involved injuries sustained in a vehicle accident, payment by a benefit plan of more than $74,000 in medical expenses, and recovery by the injured party against the negligent third party. This recovery was substantial, amounting to a $500,000 payment plus an annuity of $2.13 million. The ERISA plan denied further benefits due to its subrogation claim, which it asserted under detailed subrogation provisions similar to the provisions here.

The court, however, found that the plan administrators had arbitrarily denied further benefits pending resolution of the subrogation dispute, since resolution of the issue in favor of the benefit plan was "uncertain." The court expressly stated, "It is a general principle of subrogation law that an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the *excess* recovered over the total amount of his loss." Citing 16 Couch on Insurance 2d §60.50. The court observed that the injured party *has not been made whole* from his portion of the settlement and thus "the Fund's right to subrogation was not mature." Guy thus considered this "general principle" as part of its authority under ERISA to review and apply provisions of ERISA-qualified plans.

And in Cutting v. Jerome Foods, Inc., 993 F.2d 1293 (7th Cir. 1993), cert.den., 510 U.S. 916, the court concluded that "the make whole doctrine is a default rule in ERISA cases" and is a "gap filler" which applies when the policy is "silent" on the issue. Cutting observed that the make whole rule applies when the insured, after paying back benefits through sums obtained from a third party, is left with "an uncompensated injury."

The "make whole" doctrine also was further considered by the Eleventh Circuit in Cagle v. Bruner, 112 F.3d 1510 (11th Cir. 1997), as to subrogation rights claimed by an employee

benefit plan for payments made by the benefit plan regarding injuries sustained in a car accident by a person covered under the plan. The Court also considered subrogation agreement language contained in the insurance or employee benefit plan. As to subrogation and the made whole rule, the court stated that the rule "is part of the common law of this circuit" (citing <u>Guy</u>).

Because the "made whole" rule is a "default" rule, according to <u>Cagle</u>, the court stated that parties can "contract out" of the doctrine by more precise description in an insurance policy or employee benefit plan of the nature of the subrogation rights involved. <u>However</u>, the court rejected the benefit plan's contention that this has occurred through the subrogation provisions in the plan at issue. <u>The court stated that the "standard subrogation language" of the plan before it was not sufficient to permit a finding that the parties had specifically excepted the effect of the make whole doctrine</u>. (Citing <u>Barnes v. Independent Auto Dealers Association</u>, 64 F.3d 1389 (9th Cir. 1995), at 1394). An ERISA plan "overrides the make whole doctrine only if it includes language `specifically allow[ing] the Plan the right of first reimbursement out of any recovery [the participant] was able to obtain even if [the participant] were not made whole.'" (Citing <u>Barnes</u>).

Further commenting on the situation and the contention that discretionary authority allowed to administrators under a plan should allow the administrators to interpret the plan in favor of its subrogation rights, the <u>Cagle</u> court remarked:

> We recognize that in <u>Cutting</u> [<u>supra</u>], the Seventh Circuit held that where a plan did not specifically accept or reject the make whole doctrine, and the administrator had discretionary authority to interpret ambiguous language in the plan, it was not arbitrary for the administrator to conclude that the plan did not incorporate the make whole doctrine. 993 F.2d at 1299. We decline to follow <u>Cutting</u>. In our <u>Guy</u> decision, we concluded that the make whole doctrine was applicable to a subrogation dispute even though the administrators of the plan had

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 14 OF 24
CASE NO. MLG 03-219

discretion to interpret the plan, and the administrators claimed the make whole doctrine was inapplicable. See 877 F.2d at 39-40.

The Cagle court continued, as to the equities involved:

> We believe Guy reached the right result. As we explained above, the make whole doctrine exists because parties to an insurance contract do not always explicitly address what happens when the insurer pays less than the insured's total loss, and the insured achieves a recovery from a third party. The effect of the doctrine is to imply into ambiguous insurance contracts (including ERISA plans) a default provision governing that situation. Either the make whole doctrine is implied into the plan (the default scenario) or it is not (if there is clear language rejecting it). There is no interpretive question for the Fund to consider.

The Cagle court rejected the contention that an ERISA plan could avoid the default rule by relying on the discretion given to the plan administrator. The court commented, "We do not believe that ERISA gives the Fund that kind of authority, which is denied to insurance companies not governed by ERISA." Further, the Fund can avoid the default rule by including in its plan language a provision explicitly providing the plan with a right to first recovery, "even when a participant or beneficiary is not made whole." Language this explicit did not appear in the provisions of the plan before the court and thus "the make whole doctrine applies to this case."

In Barnes v. Independent Automobile Dealers Asso., supra, 64 F.3d 1389 (9th Cir. 1995), noted by Cagle, the court also considered the made-whole doctrine in an ERISA context, in an auto accident situation (occurring in California). The court found that the language of the policy or plan before it and the nature of the subrogation interests involved allowed an application of a similar doctrine. That is, the make-whole rule "is supported by substantial authority in existing insurance law, and it is consistent with ERISA's purpose of protecting participants in employee benefit plans." The court added, "Because the make-whole rule does not permit an insured to

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 15 OF 24
CASE NO. MLG 03-219

recover from the tortfeasor and from her insurance company if the recovery would exceed the damages, it also is consistent with ERISA's related purpose of maintaining the interest of other employees in their benefit plans."

Thus, the court stated <u>as a matter of federal common law</u>, "We adopt as federal common law this generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured <u>must be made whole before an insurer can enforce its rights to subrogation</u>." [Emphasis supplied]. The court went on to conclude that the injured party was not "made whole" by the recovery so far obtained.

Similarly, in <u>Hartenbower v. Electrical Specialties Co. Health Benefit Plan</u>, 977 F.Supp. 875 (N.D. Ill. 1997), involving a pedestrian accident, the court considered the subrogation clauses of the policy at issue. Noting <u>Barnes</u>, the court stated that it is a "general equitable principle" of insurance law that "absent agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." The court discussed the application of the make-whole doctrine as a matter of federal common law in interpreting ERISA and plans covered by ERISA.

The court then decided that in order to preclude application of the make-whole doctrine, the plan at issue must specifically address it. The court stated, "Employees should unequivocally know if their plan disallows application of the make-whole rule. ... Plans should give employees plain information regarding the administration of their plans. ... Thus, although ERISA does not require that an employee welfare plan follow the make-whole doctrine, it should plainly state any intention not to do so."

Finding that the plan before it "has not explicitly disallowed the make-whole doctrine" the court found that the doctrine could be applied. Thus, the injured party is entitled to be made whole and the plan is liable as an excess carrier for any medical or hospital payments not covered by insurance or indemnification." The court went on to discuss other issues involving ERISA and subrogation.

Here, as has already been noted, there is no express reference in the Plan subrogation terms to the "make whole" rule. Nor is there any statement that the Fund is entitled to first and full dollar reimbursement from any sum recovered by the covered person in any action against a third party for the injuries involved, <u>even if</u> such recovery does not make the covered person whole. Therefore, in accordance with the federal decisions noted, the make whole doctrine applies and the Fund's subrogation interest cannot be honored.  (But see:  <u>Ryan v. Federal Express Corp.</u>, 78 F.3d 123 (3rd Cir. 1996); <u>Sunbeam-Oster Co., Inc. v. Whitehurst</u>, 102 F.3d 1368 (5th Cir. 1996); <u>Waller v. Hormel Foods Corp.</u>, 120 F.3d 138 (8th Cir. 1997), and <u>Harris v. Harvard Pilgrim Health Care, Inc.</u>, 20 F.Supp.2d 143 (D.Mass. 1998)).

Subrogation is not a divine right of insurance companies.  Whether created by contract or otherwise, subrogation, at its core, invokes equitable principles subject to judicial consideration. It is quite evident that Federal courts reviewing benefit plans in an ERISA context have found the "make whole" doctrine to be applicable as a matter of federal common law of ERISA.

<u>b.      Further Explanation of the "Made Whole" Rule</u>

Although in the context of state law, a detailed and useful consideration of the interests and equities addressed by the "make whole" doctrine was made by one of the cases reviewing the doctrine, <u>Shelter Insurance Companies v. Frohlich</u>, 243 Neb. 111, 498 N.W.2d 74 (1993).

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 17 OF 24
CASE NO. MLG 03-219

The court concluded that in absence of a valid contractual provision or statute to the contrary, an insurer may exercise a subrogation interest only when the insured has obtained an amount that exceeds the insured's own loss. The settlement in the auto accident claim was $212,500, and medical expenses paid by one medical insurer amounted to $10,000 (although medical costs were $50,000). The trial court determined that the medical insurer should be paid its $10,000. This was reversed.

The court noted the general principles of subrogation, stating that "subrogation is unavailable until the debt owed to a subrogor has been paid in full." [citations omitted]. However, "if a contract provides for subrogation on payment of less than the full amount of a debt or loss, partial payment of a debt or loss may be the basis of subrogation." But unless a contract provides otherwise, equitable principles apply "even when a subrogation is based on contract." [Citations omitted]. If the contract "is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation." Insurance subrogation also involves the principles that 1) an insured should not recover twice for the same loss (such as from the insured's insurer and the tortfeasor), and 2) a wrongdoer should reimburse an insurer for payments that the insurer has made to the insured.

The <u>Frohlich</u> court stated that while a made-whole argument can be considered as to subrogation, "Nebraska law imposes no requirement that an insurer prove that its subrogor has been fully compensated for a loss before the insurer is entitled to subrogation." As to the made-whole argument, the court, citing numerous cases, stated:

> ...nearly every appellate court that has considered the question has recognized that unless an insurance policy contains a provision to the contrary, an insurer's right

to recover under a subrogation clause of an insurance policy requires that the insured must have been fully compensated for the loss covered by that policy.

     * * *

Thus, in the absence of a valid contractual provision or statute to the contrary, an insurer may exercise its right of subrogation only when the insured has obtained an amount that exceeds the insured's loss.

     * * *

...the underlying premise seems to be that, under principles of equity, an insurer is entitled to subrogation only when the insured has received, or would receive, a double payment by virtue of an insured's recovering payment of all or part of those same damages from the tortfeasor.

Commenting on the practical issues before it, the Shelter Insurance court also stated:

Allowing an insurer to subrogate against an insured's settlement when an insured has not been fully compensated would mean that all the insured's settlement could be applied to a medical payment subrogation claim with nothing left to compensate the insured for excess medical bills and personal injuries. Insurance companies accept premiums in exchange for medical payment coverage and may be obligated to pay medical expenses regardless of their insured's negligence or whether a third-party tortfeasor is liable and, therefore, must pay damages. In addition, there is little empirical substantiation that possible reimbursement through successful subrogation is considered in determining insurance premiums for medical payment coverage. [Emphasis supplied].

Other factors include the tortfeasor's ability to pay beyond the amount of the settlement and

whether the settling parties have stipulated that the settlement "satisfies all damages sustained"

by the subrogor.

    In the case before it, the loss exceeded the settlement. Thus, the Shelter Insurance court

stated, if the injured party's damages exceed the amount received in settlement of her claim

against a responsible party, the injured party has not been fully compensated for the loss and

PLUMBERS AND STEAMFITTERS LOCAL 486                            PAGE 19 OF 24
MEDICAL FUND V. BOOKS, ET AL                                   CASE NO. MLG 03-219
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

therefore, the medical payment insurer "is not entitled to any part of the proceed from the settlement" involved.

Similarly, in Rimes v. State Farm Mutual Automobile Insurance Company, 106 Wisc.2d 263, 316 N.W.2d 348 (1982), the court, commenting on the "make whole" rule and the equities involved, stated the rule that subrogation is not effective until the injured party is made whole "applies to an insurer claiming subrogation under contract and that such insurer is to be allowed no share in the recovery from the tortfeasor if the total amount recovered by the insured from the insurer and the wrongdoer does not cover his entire loss. The Rimes court reiterated:

> Thus, even though an insured has recovered from a tortfeasor a sum more than sufficient to equal the subrogated amount claimed by the insurer, the insurer is not entitled to subrogation unless the insured has been made whole for his loss. The purpose of subrogation is to prevent double recovery by the insured. Under circumstances where an insured has received full damages from the tortfeasor and has also been paid for a portion of those damages by the insurer, he receives double payment--he has been made more than whole. Only under those circumstances is the insurer, under principles of equity, entitled to subrogation. Subrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor. The insured is to be made whole, but no more than whole.

The court rejected the argument that a "settlement" by the insured is a "statement" by the insured that the settlement figure indeed represents and covers the insured's entire loss. The court said that such a settlement is simply the release of a claim and is not an affirmation by the injured party that they have been made whole for all damages sustained.

It is quite evident, as suggested by other courts, that should it be necessary for one party to not be compensated, the insurer is in a much better position to be that party (and has contemplated such by entering into a benefits payment contract even though there may not be recovery by a third party for benefits advanced). Thus, enrichment of the Fund may indeed be

"unjust" considering the equities of the "make whole" rule, even if the claimant has "recouped substantial benefits" from the Fund.

Therefore, given the equities involved in the present matter, the consistent use of the "make whole" doctrine in the courts as well as the crucial purposes behind this rule, the applicability of the "make whole" doctrine in ERISA matters, decisions of other Federal courts (including three Circuit Courts) that the "make whole" doctrine should apply unless specifically excluded, the absence of clear and direct language expressly waiving the application of this doctrine in subrogation provisions of the Fund, and the fact that the settlement does not make Mrs. Books whole, the doctrine should be applied here to deny the subrogation interest asserted by the Fund.

### 4.  Effect of Paris v. Iron Workers Trust Fund (D. Md., Fourth Circuit)

This discussion is not precluded by a previous decision of this Court, Paris v. Iron Workers Trust Fund Local No. 5, 44 F. Supp. 2d 747 (D. Md. 1999), aff'd 2000 U.S. App. LEXIS 6883, 24 Empl. Ben. Cas. 2547 (4th Cir. 2000) [unpublished].   In Paris, the District Court decided that under the insurance benefit plan language before it, the insurer's subrogation interest was not affected by the "made whole" rule, and suggested that the "made whole" rule need not be adopted as part of the Federal common law of ERISA. However, to Defendants' knowledge, Paris remains the sole decision within this District on the issue, and Defendants further maintain that it is not binding on this Court.  In addition, the Fourth Circuit's decision in Paris is unpublished, rendering that decision without precedential effect.

PLUMBERS AND STEAMFITTERS LOCAL 486
MEDICAL FUND V. BOOKS, ET AL
MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PAGE 21 OF 24
CASE NO. MLG 03-219

Also, the Paris decisions were issued under different health benefits plan language than the subrogation provisions here. Because these determinations are so connected to specific plan language, any effect of the Paris decisions is attenuated in this instance.

Moreover, the Paris decisions were issued prior to the Supreme Court's decision in Great-West, which has brought the equitable issues of subrogation to the central discussion of subrogation recovery of an insurer under ERISA. Thus, Great-West necessarily requires a consideration of the "made whole" rule as part of that equitable determination of subrogation, although curiously Great-West did not decide whether the "made whole" rule is part of the Federal common law of ERISA or would preclude subrogation recovery in a given instance.

Finally, Defendants point out that the Fund, inexplicably equating availability of a cause of action with entitlement to recovery, has not undertaken any discussion of the "made whole" rule and has not either cited or relied upon either of the Paris decisions. Defendants thus maintain that the "made whole" rule can be applied here, notwithstanding the Paris decisions, and further that the application of this rule is not precluded by Plan language and prevents subrogation recovery in this case.

### III. CONCLUSION

Defendants thus state:

1. The Plan's highly specific subrogation term does not apply to Mrs. Books.

2. The Plan's assertion that it possesses an equitable subrogation claim under current Supreme Court decisions does not require a conclusion that it is entitled to subrogation relief.

3.    The "made whole" rule, as a necessary part of the subrogation analysis, precludes subrogation relief in any event.

4.    Consistent with the decisions of several Federal courts, the "made whole" rule should be adopted as part of the Federal common law of ERISA.

5.    The equitable considerations of the "made whole" rule apply here despite the size of the recovery obtained in the underlying action.

6.    For several reasons, the <u>Paris</u> decisions do not control the present discussion and therefore permit this Court to apply the central principles of the "made whole" rule to this case.

Therefore, the Fund's mere contention that it is entitled to equitable restitution, hardly ends the discussion. The facts of the underlying event, the specific language of the Plan, the individualized rights and activities of the parties, and the scope of economic and non-economic damages suffered by Rita Books are pertinent, and are more than sufficient to preclude summary judgment for the Fund.

Under summary judgment standards, and given the nature of the claims presented, and all material and statements before this Court clearly demonstrating that a factual dispute exists, disposing of the pending claims at this juncture, by summary judgment in favor of Plumbers and Steamfitters Local 486 Medical Fund, would be improper and unwarranted.

WHEREFORE, the premises considered, Defendants, Rita L. Books, Roger Books and Nathaniel Fick, P.C. Client Trust Account, respectfully requests that this Court DENY the Motion for Summary Judgment of Plaintiff.

RESPECTFULLY SUBMITTED,

Date: July 29, 2003

**NATHANIEL FICK**
**Bar No. 01822**
**Fick & Petty**
1426 East Joppa Road
Towson, Maryland 21286-5982
410-321-6000
Attorney for Defendant

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 29th day of July, 2003, I mailed, postage prepaid, a copy of Defendants' Memorandum in Opposition to Motion for Summary Judgment of Plumbers and Steamfitters Local 486 Medical Fund, to:

        COREY SMITH BOTT, Esquire
        Abato, Rubenstein and Abato, P.A.
        809 Gleneagles Court, Suite 320
        Baltimore, MD  21286
        Attorney for Plaintiff

NATHANIEL FICK

**IN THE UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | |
|---|---|
| PLUMBERS AND STEAMFITTERS<br>LOCAL 486 MEDICAL FUND,<br>by its Trustee,<br>Bernard J. Vondersmith | * |
| | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *    CIVIL ACTION NO. MJG 03-219 |
| RITA L. BOOKS | * |
| and<br>ROGER BOOKS | * |
| and | * |
| NATHANIEL FICK, P.C.<br>CLIENT TRUST ACCOUNT | * |
| | * |
| Defendants | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ORDER

It appearing from the record in the above-entitled action that there are genuine disputes of

material facts or that the Plaintiff is not entitled to judgment as a matter of law, therefore,

It is this _____ day of _____, 2003, by the United States District

Court for the District of Maryland,

ORDERED and ADJUDGED, that the Motion for Summary Judgment of Plaintiff,

Plumbers and Steamfitters Local 486 Medical Fund, be and it is hereby DENIED.


_____
Marvin J. Garbis
United States District Judge