IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PLUMBERS AND STEAMFITTERS          *
LOCAL 486 MEDICAL FUND
                                   *
          Plaintiff
                                   *
     vs.                             *  CIVIL ACTION NO. MJG-03-219

RITA L. BOOKS, et al.              *

          Defendants               *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER

     The Court has before it the Motion for [Partial] Summary

Judgment [Paper 19] filed by Plaintiff Plumbers and Steamfitters

Local 486 Medical Fund (the "Fund" or "Plaintiff") and the materials

submitted by the parties related thereto.  The Court finds a hearing

unnecessary.


I.   BACKGROUND[1]

     The instant case concerns a medical benefits contract,

the Plumbers and Steamfitters Local 486 Medical Plan (the

"Plan"), of which Defendant Rita Books ("Ms. Books") is a

beneficiary and of which Plaintiff is an administrator.  The

parties dispute whether the Fund is entitled to reimbursement

for benefits conferred to Ms. Books.

---

[1]    The facts stated herein are undisputed, unless
otherwise indicated.

The Plan stems from a collective bargaining agreement involving Denver-Elek, Inc., Defendant Roger Books' employer. At all times relevant hereto, Roger Books ("Mr. Books") was a "covered employee" under the Plan; his spouse, Ms. Books, was an "eligible dependent."  Pl.'s Ex. 3, at 3.

On May 20, 1998, Ms. Books was involved in an automobile accident, sustaining serious physical injuries and significant medical expenses.  Pursuant to Plan provisions, the Fund provided to Ms. Books $60,847.60 in benefits to cover medical expenses.

Ms. Books subsequently received approximately $640,000 from an alleged tortfeasor in settlement of her claims relating to the May 20 accident.  Plaintiff alleges that, under the Plan, Ms. Books is obligated to reimburse the Fund from her settlement recovery for those expenses the Fund paid on her behalf.  After informing the Books of its position, the Fund "offset" $3,479 from its payment on various benefits due to the Books under the Plan.  Pl.'s Ex. 1, Aff. of Dale O. Troll, at 3; Countercl. on Behalf of Mr. & Ms. Books ¶ 24.

Pursuant to this Court's Order of January 29, 2003 [Paper 5], Defense counsel placed in escrow with the Clerk of Court $57,395.60, an amount corresponding to the amount Plaintiff paid in coverage of Ms. Books' medical expenses minus the

2

amount it subsequently offset from the Books' benefits.
Plaintiff brings suit to recover these escrow funds.
Defendants counterclaim to recover the $3,479 offset.
Plaintiff seeks summary judgment on its claim for the escrow
funds.  The Fund contends that it is entitled to the amount in
escrow under 29 U.S.C. § 1132, § 502 of the Employee
Retirement Income Security Act of 1974 (ERISA).  Defendants
contend that:

> 1) the Plan requires only "covered employees" – and not
>    "eligible dependants" like Ms. Books – to reimburse
>    the Fund from settlement recoveries, and
>
> 2) Plaintiff has no reimbursement rights under federal
>    law because Ms. Books' settlement recovery did not
>    fully compensate her for her injuries.

## II.    <u>LEGAL STANDARD</u>

A motion for summary judgment shall be granted if the
pleadings and supporting documents "show that there is no
genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law."  Fed. R.
Civ. P. 56(c).

There are no factual issues presented by the instant
motion.  Accordingly, the questions presented are legal
issues.

III. <u>DISCUSSION</u>

    A.   <u>Jurisdiction</u>

The parties agree that the Plan is governed by ERISA.
Mem. of P.&A. in Supp. of Pl. Fund's Mot. for Summ. J., at 1;
Defs.' Mem. in Opp'n to Mot. for Summ. J. of Fund, at 11.
ERISA affords this Court jurisdiction over a claim by a Plan
fiduciary against Plan beneficiaries.[2]  29 U.S.C. § 1132(a)(3)
(2003).  There is no doubt that the sum held in escrow by the
Clerk is "traceable" to funds in Defendants' possession
regarding which Plaintiff has a <u>bona fide</u> claim of right.
Mem. of P.&A. in Supp. of Pl. Fund's Mot. for Summ. J., at 10;
Defs.' Mem. in Opp'n to Mot. for Summ. J. of Fund, at 9.
Accordingly, the Court has equitable authority to grant the
Fund relief with regard to the amount in escrow.  <u>Great-West
Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 213 (2002).

---

      [2]    Nothing in the statute suggests that a plaintiff is
precluded from also naming a beneficiary's trust account as a
defendant.

B.    <u>The Plan's Subrogation Language</u>

The Plan's terms are set forth in the Summary Plan Description ("SPD") distributed and addressed to "covered employees."  The SPD states, in pertinent part:

> SUBROGATION
>
> If you or one of your Dependents... is injured directly or indirectly by a third party, the Plan will pay covered benefits as usual.  If <u>you</u> recover damages from... the third party as a result of a settlement or award for the Injury, the Plan must be reimbursed for any expenses that it paid in connection with the Injury.  For example, assume that you and your spouse are injured in an automobile accident... and that the Plan pays $1,000 in benefits to you for Injuries resulting from the accident.  If you and your spouse receive money from [a tortfeasor], the Plan is entitled to receive up to $1,000 of the money you receive as reimbursement for the benefits it provided.[3]

First, the Court finds that the Plan vests Plaintiff with reimbursement rights that it may assert directly against beneficiaries, not merely the right to independently pursue tortfeasors (as Defendants suggest).  Defs.' Mem. in Opp'n to Mot. for Summ. J. of Fund, at 6.  The SPD states that the Fund "is entitled to receive... money [beneficiaries] receive [from tortfeasors] as reimbursement for the benefits it provided." Thus, the Fund is not limited to the illusory "right" to seek

---

[3]    Pl.'s Ex. 3, at 29 (emphasis added).

5

to have a tortfeasor make a duplicative payment or to somehow seek to make a direct claim against a tortfeasor.

Second, the Plan confers upon all beneficiaries (including dependents such as Ms. Books) a duty to reimburse the Fund.

Defendants contend that this obligation extends only to covered employees, because the SPD states, "If you recover damages[,]... the Plan must be reimbursed." According to Defendants, the pronoun "you" in the second sentence of the subrogation paragraph (underlined above) refers exclusively to covered employees such as Mr. Books, because the SPD is addressed to covered employees in conversant tone,[4] and because "you" in the preceding sentence clearly refers solely to a covered employee.

"You" is not a term explicitly defined in the SPD. Moreover, the word "you," in the English language, is inherently ambiguous, useable as either a singular or a plural pronoun. The precise meaning of "you" is, therefore, inherently context-derived.

As Defendants note, the word has been used in the Plan as a singular pronoun referring solely to the covered employee.

---

[4]    Attached to the SPD was a letter addressed "to all covered employees." Pl.'s Ex. 3 (third page, unnumbered).

The first sentence of the subrogation paragraph states, "If you or one of your Dependents... is injured... the plan will pay..."; here, "you" is clearly singular, as suggested by the disjunctive phrase "or one of your Dependents."  Courts often "presume that words have the same meaning throughout [a] contract." McLane & McLane v. Prudential Ins. Co. of Am., 735 F.2d 1194, 1195 (9th Cir. 1984).

On the other hand, it is quite common for the word "you" to be used as a singular and as a plural pronoun in the same writing or speech.  Thus, the word "you" could well have different meanings in the SPD.[5]

The SPD has a provision concerning ambiguities: "The Board of Trustees [of the Fund] has... discretion to determine all questions of coverage, eligibility for and entitlement to benefits, methods of providing or arranging for benefits, and other related matters."[6]  Pl.'s Ex. 3, at 33.

It is not necessary for this Court to read this "discretion clause" to give the Fund the ability to take

---

[5]    The Court rightly considers "normal habits in the use of language" in the course of interpreting a contract term.  2 Farnsworth on Contracts § 7.11, at 280 (2d ed. 1998).

[6]    Conditions of benefits, such as reimbursement obligations, are safely deemed matters "related" to a party's eligibility for and entitlement to benefits.

7

unconscionable action, as Plaintiff's counsel suggests.  It suffices to hold that, by this clause, the parties to the Plan contracted to eschew common law notions that "an ambiguous contract is construed against its drafter." E.g., Playboy Enter., Inc. v. Marine Ins. Co., 769 F.2d 425, 428 (7th Cir. 1985).  As the parties have directed, the Court will construe ambiguities in the Plan – such as the grammatical status of the operative "you" – with deference to the Fund's reasonable interpretations.  See Booth v Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir 2000) (where an ERISA plan gives an administrator discretion to interpret contractual terms, a court should afford reasonable deference), citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).

The Fund submits that the operative "you" is plural, that dependants and employees alike are required to reimburse the Fund.  The record suggests that the Fund's interpretation has been consistent over time.  Pl.'s Ex 1, Aff. of Dale O. Troll, at 2.  This interpretation, Plaintiff contends, is reasonable and consistent with the Fund's fiduciary duty to administer the Plan for the benefit of all participants.  Mem, of P.&A. in Reply to Defs.' Opp'n to Pl.'s Mot. for Summ. J., at 4-5. Inasmuch as replenishing the Fund facilitates members' access

8

to medical benefits, the Court agrees that Plaintiff's interpretation serves a key purpose of the Plan. <u>See</u> Restatement (Second) of Contracts § 202 (1981) (a contract should be interpreted in light of its purpose and in a manner consistent with a party's relevant course of performance).

In sum, the Fund's interpretation of the Plan is reasonable and entitled to deference. Moreover, if presented with the issue for <u>de novo</u> resolution, the Court would reach the same conclusion as did the Fund. Thus, the Plan affords Plaintiff a right to be reimbursed by Ms. Books.


C.    <u>The "Make Whole Rule"</u>

Defendants argue that, pursuant to a doctrine of federal common law known as the "Make Whole Rule," the Fund would not be entitled to recovery from Ms. Books unless and until she recovers full compensation for all of her injuries (which, Defendants claim, has not happened here).

The Make Whole Rule does not apply to the Plan for two reasons:  First, the parties to the Plan appear to have waived the Rule's application.  Second, the Rule has not been, and the case law suggests that it will not be, adopted in the Fourth Circuit.

9

### 1.  The Plan Opts Out of the Rule

Where the Make Whole Rule has been recognized, it has been understood to be "[a]t most... a default Rule." Cagle v. Bruner, 112 F.3d 1510, 1521 (11th Cir. 1997); see also Great-West Life & Annuity Ins. Co. v. Clingenpeel, 996 F.Supp. 1353, 1356 (W.D.Okla. 1997).  In other words, the Rule may apply to an ERISA plan that is silent or ambiguous as to whether partially compensated beneficiaries have reimbursement obligations; the parties, however, can certainly contract around the Rule's effect.

The Plan's subrogation paragraph states "the Plan must be reimbursed [by Defendants] for any expenses that it paid in connection with [Ms. Books'] Injury." Pl.'s Ex. 3, at 29 (emphasis added).  Similar language has been deemed to preclude the Rule's application.[7]  In addition, the SPD's subrogation illustration strongly suggests that the Fund is entitled to reimbursement from injured beneficiaries'

---

[7]    In re Paris, 44 F.Supp.2d 747 (D. Md. 1999).  In Paris, the ERISA plan stated, "the insured person agrees that any amounts recovered by the insured person... will first be applied to reimburse the fund."  Id., at 748.  Judge Smalkin ruled that the plan documents needn't have explicitly mentioned the "make whole doctrine" to avoid the Rule.  Id., at 749.

recoveries without regard to whether the beneficiaries are fully compensated.  Pl.'s Ex. 3, at 29.

Thus, the Plan clearly vests Plaintiff with reimbursement rights non-contingent on Defendants' full compensation, opting out of the default Make Whole Rule.


2.    The Fourth Circuit Has Not Adopted the Rule

The United States Court of Appeals for the Fourth Circuit has decided "not to adopt the make-whole doctrine as a matter of federal common law in ERISA cases," comporting "with the weight of authority addressing the issue."  Paris v. Iron Workers Trust Fund, 2000 WL 384036, at *3 (4th Cir. 2000) (affirming Judge Smalkin's holding), citing Waller v. Hormel Foods Corp., 120 F.3d 138 (8th Cir. 1997), Sunbeam-Oster Co. v. Whitehurst, 102 F.3d 1368 (5th Cir. 1996), Cutting v. Jerome Foods, Inc., 993 F.2d 1293 (7th Cir. 1993), and Great-West Life & Annuity Ins. Co. v. Barnhardt, 19F.Supp.2d 584 (N.D. W.Va. 1998).

As the Fourth Circuit noted in Paris, there are sound bases for refusing to adopt the Make Whole Rule.  Federal courts should be reluctant to fashion rules of substantive common law in the absence of, or in tension with, congressional direction.  See Erie R.R. v. Tomkins, 304 U.S.

11

64 (1938); <u>D'Oench, Duhme & Co. v. Fed. Deposit Ins. Co.</u>, 315
U.S. 447, 472 (1942).  In the context of ERISA cases, the
courts should develop common law only "when necessary to
effectuate the purposes of ERISA."  <u>United McGill Corp. v.
Stinnett</u>, 154 F.3d 168, 171 (1998) (citation omitted).

As the Fourth Circuit concluded, the Make Whole Rule is
hardly necessary to effectuate ERISA.  <u>Paris</u>, 2000 WL 384036
at *3.  Indeed, the Rule may well frustrate ERISA's purposes,
insofar as it may inhibit the capabilities of self-funded (and
often resource-strapped) ERISA plans to replenish their funds
and maintain their viability by means of subrogation
provisions.  <u>See id</u>.

Accordingly, the Court will not apply the Make Whole Rule
in the instant case.


D.    <u>Remaining Matters</u>

The Court notes that Plaintiff's Motion and the related
papers pertained solely to Plaintiff's claim (for the amount
held by the Clerk of Court), not to Defendants' counterclaim
(concerning the $3,479 "offset").  The Court has not been
briefed on the offset issue and thus cannot properly and
thoroughly consider it herein.  Accordingly, the Court does
not comment on Defendants' counterclaim in any way.

IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1.  Plaintiff Plumbers and Steamfitters Local 486
    Medical Fund's Motion for [Partial] Summary
    Judgment [Paper 19] is GRANTED.

2.  By December 15, 2003, Plaintiff shall arrange a
    telephone conference to discuss further
    proceedings herein concerning Defendants'
    counterclaim.

SO ORDERED, on <u>Monday, December 1, 2003</u>.

_____/ s /_____

Marvin J. Garbis
United States District Judge
